**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEMETRIUS THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-01566 JAR |
| | ) | |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Third Amended Complaint. (Doc. No. 115).[1] The motion is fully briefed and ready for disposition. For the following reasons, the motion is granted in part and denied in part.

**I.      Background**

This is one of several cases filed in this District arising out of the protest activity following the September 15, 2017 verdict in State v. Stockley, No. 16220CR02213-01 (Mo. 22nd. Jud. Cir. Sept. 15, 2017). Plaintiff Demetrius Thomas, an independent journalist, filed this action in 2018, alleging he was illegally "kettled,"[2] beaten and arrested while observing and documenting the protest on September 17, 2017. Plaintiff amended his complaint on January 9, 2019 and February 14, 2019 and the parties engaged in extensive discovery to identify unnamed Doe defendants.

---

[1] Each of the individual Defendants is sued in his or her individual capacity.  The City has answered the complaint and has not joined the motion to dismiss.

[2] According to the complaint, "kettling" is a law enforcement tactic by which officers encircle a group of protestors without providing a means of egress. (Third Amended Complaint ("TAC"), Doc. No. 103 at ¶¶ 69, 71-73).

Following completion of this discovery, Plaintiff filed his third amended complaint on October 21,

2020, alleging claims under 42 U.S.C. § 1983 and Missouri state law as follows:

**Count 1**: Unreasonable seizure under the Fourth and Fourteenth Amendments against Defendant Officers[3];

**Count 2**: Violations of free speech, press, association, and assembly under the First and Fourteenth Amendments against Defendant Officers;

**Count 3**: Conspiracy to violate civil rights against Defendant Officers and Defendant Lt. Col. Lawrence O'Toole, the acting Chief of Police for the City of St. Louis;

**Count 4**: Failure to train, discipline, and supervise, and an unconstitutional custom of unconstitutional seizures and using excessive force against Defendant City of St. Louis;

**Count 5**: Assault against Defendant Officers;

**Count 6**: False arrest against Defendant Officers;

**Count 7**: Abuse of process against Defendant Officers and Defendant O'Toole;

**Count 8**: Malicious prosecution against Defendant Officers and Defendant O'Toole;

**Count 9**: Intentional infliction of emotional distress against Defendant Officers;

**Count 10**: Negligent infliction of emotional distress against Defendant Officers;

**Count 11**: Vicarious liability under the City of St. Louis Charter against Defendants O'Toole and Charlene Deeken, Director of Public Safety for the City;

**Count 12**: Excessive force under the Fourth and Fourteenth Amendments against Defendant Officers;

**Count 13**: Failure to intervene in the use of excessive force against Defendant Officers and Defendant O'Toole; and

**Count 14**: Battery against Defendant Officers.

---

[3] The Third Amended Complaint defines "Defendant Officers" as those officers identified in ¶¶ 12-19 of the third amended complaint, including the Supervisor Officers defined in ¶ 17.

The individual Defendants move to dismiss Plaintiff's third amended complaint for failure to state a claim. Defendants also move to dismiss Plaintiff's § 1983 claims based on qualified immunity and his state law claims based on official immunity. Lastly, Defendants contend the Court should decline to exercise supplemental jurisdiction over Plaintiff's City Charter claim. Other judges in this District have recently addressed the same or similar arguments on motions to dismiss in Stockley protest cases. See Davis v. City of St. Louis, Mo., No. 4:18-CV-1574, 2021 WL 4148331 HEA (Sept. 13, 2021); Newbold v. City of St. Louis, Mo., No. 4:18-CV-1572 HEA, 2021 WL 4061066 (E.D. Mo. Sept. 7, 2021); Ortega v. City of St. Louis, Mo., No. 4:18 CV 1576 DDN, 2021 WL 3286703 (E.D. Mo. Aug. 2, 2021); Street v. O'Toole, No. 4:19-CV-2590 CDP, 2021 WL 677909 (E.D. Mo. Feb. 22, 2021); Baude v. City of St. Louis, Mo., No. 4:18-CV-1564 RWS, 476 F. Supp.3d 900 (E.D. Mo. 2020). The Court has looked to these opinions for guidance.

## II.    Facts

Taken as true for purposes of this motion, the facts alleged in the operative complaint are as follows. On Friday, September 15, 2017, after a four-day bench trial, Officer Jason Stockley was acquitted of the first-degree murder of Anthony Lamar Smith. Following the announcement of the Stockley verdict, public protests began at multiple locations in the St. Louis metropolitan area. Although most of the protests were nonviolent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying [chemical agents]." (TAC at ¶ 23).

On the evening of September 17, 2017, Plaintiff received a phone call from a friend telling him about protests that were occurring downtown. Plaintiff headed downtown to record the protests, taking his professional camera and a drone. By the time he arrived, however, the protests had ended. While driving to the intersection of Olive Street and Tucker Boulevard, a large group

of officers surrounded and then passed by his car. Plaintiff got out of his car to record their actions. An officer, who Plaintiff believed to be a supervisor, told him he was permitted to record as long as he remained on the sidewalk. Plaintiff complied and joined members of the media, including a person known as "RebZ," on a sidewalk corner. Plaintiff observed a large black SLMPD police truck making some inaudible announcement. Suddenly, Plaintiff noticed a change in the demeanor of the officers. His attempt to exit through an alley was blocked by an officer with a baton who then directed him back to the intersection of Washington Avenue and Tucker Boulevard.

Upon arriving at the intersection, Plaintiff observed between 100 to 200 officers pounding their batons against their shields and the ground. Plaintiff attempted to get to his car parked on Washington Avenue west of Tucker Boulevard, but police prevented him from leaving, even though he was loudly pleading with them to be allowed to leave. In response to his pleas, a SLMPD officer pointed a large can of pepper spray at Plaintiff and told him to "get out of here," and directed him back to the intersection of Washington Avenue and Tucker Boulevard.

Upon returning to the intersection, Plaintiff encountered a large group of terrified people trying to leave the area. He and the rest of the group tried to leave by going east of Washington Avenue, but were prevented from leaving by a phalanx of bike officers. Plaintiff quickly attempted to secure his $6,000 camera. Soon after, he was knocked to the ground. He heard his friend yell "They are pushing us." Without warning, SLMPD officers, including Defendants Bill Kiphart, Matthew Burle, and Tom Long, began to indiscriminately pepper spray the people that had been kettled.

Even though Plaintiff was on the ground and fully compliant, an unidentified officer grabbed him by his arms and dragged him to another spot in the intersection. Despite Plaintiff's full compliance, Defendants Samuel Gilman, Brian Lemons, Joseph Rodriguez, Timothy

4

McNamara, Trenton Lee, Patrick Daut, and Nicholas Lee grabbed him by the arms and legs while one of them repeatedly beat him in the ribs with a baton. (TAC at ¶ 171). The City has identified Defendant Trenton Lee as Plaintiff's arresting officer. (Id. at ¶ 172). These Defendants confiscated Plaintiff's camera, broke his drone, and roughly, painfully zip tied his hands. (Id. at ¶¶ 173-74). They further terrorized Plaintiff by carrying him by each of his limbs, across the intersection before returning him to his feet. (Id. at ¶ 175).

Even after he was zip tied, Plaintiff did not believe he was going to be arrested, as he had done nothing wrong. Yet, Plaintiff spent at least 48 hours in jail. Upon his release, Plaintiff received a criminal summons and a court date for an initial appearance. Plaintiff further alleges that during and after the arrests, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!" (Id. at ¶ 101).

In addition to the factual allegations regarding the protests on the night of September 17, 2017, Plaintiff's complaint details other allegations of the SLMPD's use of chemical agents against protestors without warning, use of excessive force, and the history of litigation against the City for these types of incidents.

### III.   Legal Standard

"To survive a motion to dismiss for failure to state a claim, the complaint must show the plaintiff 'is entitled to relief,' Fed. R. Civ. P. 8(a)(2), by alleging 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (en banc) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court accepts all factual allegations as true and construes all reasonable inferences in

the light most favorable to the nonmoving party. Usenko v. MEMC LLC, 926 F.3d 468, 472 (8th Cir.), *cert. denied*, – U.S. –, 140 S. Ct. 607 (2019). The Court need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts. Waters v. Madson, 921 F.3d 725, 734 (8th Cir. 2019). The complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" K.T. v. Culver-Stockton Coll., 865 F.3d 1054, 1057 (8th Cir. 2017) (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 544, 678 (2009) (internal quotation marks omitted). A facially plausible claim is one "that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Wilson v. Ark. Dep't of Human Servs., 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation omitted). This "standard asks for more than a sheer possibility that a defendant has acted unlawfully, or more than a mere possibility of misconduct." Id.

Courts generally consider only the complaint's allegations in determining whether to grant a Rule 12(b)(6) motion but may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" without converting a motion to dismiss to one for summary judgment. Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 & n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)).

## IV. Discussion

### A. Exhibits attached to prior complaints

As a threshold matter, Defendants assert that in evaluating the plausibility of Plaintiff's third amended complaint, the Court can and should consider the exhibits from Ahmad v. City of

6

St. Louis[4] attached to his second amended complaint, <u>see</u> Doc. Nos. 34-4 to 34-7[5], but now omitted. Defendants state the record in <u>Ahmad</u> is a matter of public record of which the Court can take judicial notice. Plaintiff responds that a court can only judicially notice a fact that is not subject to reasonable dispute, <u>see</u> Fed. R. Evid. 201(b), and that in this case, his allegations conflict with Defendants' self-serving testimony. Plaintiff argues the Court should only consider the allegations within the operative complaint.

"It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect." <u>Doe v. Roman Cath. Archdiocese of St. Louis</u>, No. 4:20-CV-331 PLC, 2020 WL 7240353, at *2 (E.D. Mo. Dec. 8, 2020) (quoting <u>In re Wireless Tel. Fed. Cost Recovery Fees Litig.</u>, 396 F.3d 922, 928 (8th Cir. 2005)); <u>see also</u> <u>Thomas v. United Steelworkers Loc. 1938</u>, 743 F.3d 1134, 1139 (8th Cir. 2014). Accordingly, a court may not consider evidence attached to the original complaint on a motion to dismiss the amended complaint because the documents are outside the pleadings. <u>See</u> <u>Ayres v. Ocwen Loan Servicing, LLC</u>, 129 F. Supp. 3d 249, 270 n.34 (D. Md. 2015) (refusing to consider documents attached to original complaint when considering motion to dismiss amended complaint because amended complaint superseded original complaint). Nor will the Court take judicial notice of the content of the exhibits where, as here, Plaintiff's allegations and Defendants' statements conflict with each other. <u>Cf.</u> <u>Ryan v. Ryan</u>, 889 F.3d 499, 505 (8th Cir. 2018) (finding the court could judicially notice a document outside the pleadings because the facts therein were consistent with the complaint). The

---

[4] <u>Ahmad v. City of St. Louis, et al.</u>, Case No. 4:17CV2455 CDP (E.D. Mo.).

[5] Doc. Nos. 34-4 and 34-5 are transcripts of the October 19, 2017 preliminary injunction hearing in <u>Ahmad</u>; Doc. No. 34-6 is the Declaration of Sergeant Brian Rosamanno; Doc. No. 34-7 is video evidence from the September 17, 2017 protest.

Court will not consider Defendants' requested exhibits in deciding their motion to dismiss. The Court now turns to Defendants' substantive arguments.

**B.     Section 1983 claims**

**(i)     Qualified immunity**

Defendants move to dismiss Plaintiff's § 1983 claims based on qualified immunity. "Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his [or her] individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In determining whether officials are entitled to qualified immunity, the Court asks: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Brown v. City of Golden Valley, 574 F.3d 491, 496 (8th Cir. 2009); see also Robbins v. City of Des Moines, 984 F.3d 673, 678 (8th Cir. 2021). Courts, in their sound discretion, may consider the questions in either order, but a § 1983 plaintiff can defeat a claim of qualified immunity only if the answer to both questions is yes. Hazley v. Roy, 378 F. Supp. 3d 751, 755 (D. Minn. 2019) (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would have understood that what he is doing violates that right. Quraishi v. St. Charles County, Mo., 986 F.3d 831, 835 (8th Cir. 2021) (citation omitted). The state of the law at the time of the alleged violation – articulated by precedent, controlling authority, or a robust consensus of persuasive authority – must give officials "fair warning" that their conduct was unlawful. Id. There may also be the rare obvious case where the unlawfulness of the officer's

conduct is sufficiently clear even though existing precedent does not address similar circumstances. Id.

### (ii)     Individual defendants against whom no specific allegations are made

In support of dismissal, Defendants argue that Plaintiff's "generic allegations" against the "Supervisor Officers" are not sufficient to preclude qualified immunity on Counts 1, 2, 12 and 13 for the defendants named in Paragraph 17 of the third amended complaint. The Court agrees. Plaintiff makes specific allegations only against Acting Chief of Police Lawrence O'Toole[6], Director of Public Safety Charlene Deeken, Lt. Colonel Gerald Leyshock, Lt. Timothy Sachs, Major Daniel Howard, Sgt. Randy Jemerson, Sgt. Brian Rossomanno, Officers Trenton Lee, Brian Lemons, Joseph Rodriguez, Timothy McNamara, Patrick Daut, Nicholas Lee, Sgt. Matthew Karnowski, Lt. Scott Aubuchon, Lt. Bill Kiphart, Officer Matthew Burle, Sgt. Tom Long, and Officer Samuel Gilman. As to all other defendants, there are no specific allegations other than that each defendant was employed as a senior officer with the SLMPD during the events of September 17, 2017; that each defendant "directed the police officers in their command to arrest the persons at the intersection of Washington and Tucker"; and that each defendant "knew or should have known that there was no probable cause for the arrest of Plaintiff" or "legal justification to use force against Plaintiff." (TAC at ¶¶ 17, 60).

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead direct, personal involvement in constitutional misconduct. "In a § 1983 suit … the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Iqbal, 556 U.S. at 677. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." Madewell v. Roberts, 909 F.2d

---

[6] Lt. Col. O'Toole, named in paragraph 10, is not named as a defendant in Counts 1, 2 or 12 of the Third Amended Complaint. He is, however, a named defendant in Count 13.

1203, 1208 (8th Cir. 1990) (citing <u>Rizzo v. Goode</u>, 423 U.S. 362, 370 (1976)). Because liability

for damages under § 1983 is personal, "each defendant's conduct must be independently assessed.

Section 1983 does not sanction tort by association." <u>Smith v. City of Minneapolis</u>, 754 F.3d 541,

547-48 (8th Cir. 2014); <u>see also</u> <u>S.M. v. Krigbaum</u>, 808 F.3d 335, 340 (8th Cir. 2015). Here, there

is no allegation of direct, personal involvement of these defendants with regard to Plaintiff

individually.

Faced with a virtually identical pleading in <u>Street</u>, Judge Perry dismissed all claims against

the individual defendants against whom no specific allegations were made:

> [L]iability under § 1983 requires proof of a causal link between *each* defendant and
> the *specific wrongs* that defendant committed. Put differently, asserting broad,
> sweeping allegations that a group of defendants committed constitutional
> misconduct is not sufficient to satisfy plaintiffs' pleading obligations as to each
> defendant within that group. Absent specific and plausible factual allegations,
> plaintiffs' claims are merely legal conclusions couched as factual allegations.
> Moreover, plaintiffs' vague allegations fail to provide each defendant with "fair
> notice of what the … claim is and the grounds upon which it rests."

2021 WL at 677909, at *4-5 (emphasis in the original) (citations omitted). The undersigned agrees

with Judge Perry that all claims against the defendants against whom no specific allegations are

made must be dismissed under Rule 12(b)(6).

**(iii)    Counts 1 and 2 – Unlawful seizure**

In Count 1, Plaintiff alleges his kettling and arrest were unlawful seizures in violation of

his Fourth Amendment rights. Count II alleges these actions were taken in retaliation for his

exercise of his First Amendment right to assembly, association, free speech, and a free press. To

prevail on his First or Fourth Amendment claims, Plaintiff must show that Defendants had no

probable cause for their actions. <u>Quraishi</u>, 986 F.3d at 836. To receive qualified immunity,

Defendants need only establish "arguable probable cause," which exists even where an officer has

a mistaken but objectively reasonable belief that Plaintiffs committed a criminal offense. <u>Id.</u> <u>See</u>

also Borgman v. Kedley, 646 F.3d 518, 522-23 (8th Cir. 2011). Because Defendants have not offered any specific qualified immunity or other challenges to Count II, the Court focuses its analysis on probable cause only as applied to both claims.

"Probable cause to make a warrantless arrest exists 'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Ulrich v. Pope Cty., 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting Borgman, 646 F.3d at 523). In the context of a mass arrest, the Fourth Amendment requires that "the officers have grounds to believe all arrested persons were a part of the unit observed violating the law." Bernini v. City of St. Paul, 665 F.3d 997, 1003 (8th Cir. 2012).

Citing Bernini, Defendants contend they had arguable probable cause to believe Plaintiff was acting as part of a unit to violate the law based on reports that a large crowd was milling about the intersection of Tucker and Washington impeding traffic; the crowd included persons wearing masks and goggles suggestive of intentions to confront and resist police; the crowd also included persons who had been involved in disorderly activity downtown over the previous several hours; the crowd ignored orders to disperse; some members of the crowd had assaulted or threatened officers earlier; and similar crowds had resorted to violence on two previous nights. Defendants urge the Court to follow Burbridge v. City of St. Louis, 430 F. Supp. 3d 595 (E.D. Mo. 2019), a case arising from the same incident which held that police had probable cause to believe the plaintiffs were part of a unit observed violating the law. There, the court found that officers had declared the area an unlawful assembly, issued multiple dispersal orders to the crowd, and then arrested those who refused to follow the lawful commands of the officers. Id. at 610.

To date, three judges from this District have declined to follow Burbridge, noting that the procedural posture of the case, decided on a motion for summary judgment with proffered

evidence, differs significantly from cases such as this one, at the motion to dismiss stage. See Davis, 2021 WL 4148331, at *6; Newbold, 2021 WL 4061066, at *6; Ortega, 2021 WL 3286703, at *10-12; Baude, 476 F. Supp. 3d at 912. And unlike in Burbridge, where the undisputed facts included individuals throwing rocks and other objects at officers, and the officers giving dispersal orders through a public address system, Plaintiff's third amended complaint contains no such allegations. There are no allegations the group chanted in unison, moved as a group, carried signs together, or in any way acted as if they were a unit. While some vandalism did occur hours before the mass arrest, officers ordered that group to disperse and there are no allegations that they did not, that they continued to vandalize property, or that they moved as a group towards Tucker and Washington. It is not reasonable to assume the group of individuals arrested in mass are the same group that engaged in the earlier vandalism when the area includes many businesses, including shops and restaurants, as well as residential buildings and the mass arrest occurred two to three hours after the vandalism occurred. Nor are there any allegations to support that those in the group arrested committed any crimes. See Newbold, 2021 WL 4061066, at *6.

Taking Plaintiff's allegations as true and construing all reasonable inferences in his favor, the Court finds Defendants could not have reasonably concluded that the crowd at the intersection of Tucker and Washington was acting as a unit or violating the law. Plaintiff alleges those arrested stood still, with their hands up. No one acted violently or aggressively and many asked to be allowed to leave, peacefully. The scene was relatively calm before the officers began using chemical agents and deploying force against the group. The allegations show no credible threat of force or violence to officers or property, or that any individuals were disobeying police orders. Plaintiff's allegations do not establish that the officers in this case could reasonably have concluded that the group was acting as a unit or violating the law.

Because Plaintiff's allegations do not indicate that Defendant Officers had probable cause to arrest him, and because it was clearly established on September 17, 2017 that to conduct a mass arrest, officers must have probable cause the group is committing a crime and acting as a unit, see Bernini, 665 F.3d at 1003, they are not entitled to qualified immunity on Counts 1 and 2.

Defendants also argue the remaining Defendant Officers (including Boyher, Jemerson, Karnowski and Rossomanno) are entitled to qualified immunity because they reasonably acted on the orders of their superiors. The Eighth Circuit has held that it can be objectively reasonable for one officer to rely on an assurance of probable cause from another officer. See Bell v. Neukirch, 979 F.3d 594, 609 (8th Cir. 2020); Ehlers v. City of Rapid City, 846 F.3d 1002, 1010 (8th Cir. 2017). However, that reliance must be reasonable. Bell, 979 F.3d at 609; Ehlers, 846 F.3d at 1010. Based on the allegations in the complaint, it would not be reasonable for these officers to rely on the assurance of their superiors that the crowd was not dispersing. The allegations indicate the officers saw the group acting peacefully, obeying orders, and not committing a crime. Furthermore, an individual officer is not entitled to qualified immunity simply because his superior told him to engage in unconstitutional conduct. See Quraishi, 986 F.3d at 837 ("Anderson is not entitled to qualified immunity even if his sergeant told him to deploy the tear-gas."). There is no legal support for the proposition that "a government official is immune if a superior instructs him to engage in unconstitutional conduct." Id. Defendants are not entitled to qualified immunity simply because they followed orders. The Court denies the motion to dismiss on this ground. Newbold, 2021 WL 4061066, at *7; Ortega, 2021 WL 3286703, at *12.

**(iv)   Counts 12 and 13 – Excessive force and failure to intervene**

In Count 12, Plaintiff alleges Defendants subjected him to excessive force during his arrest. In particular, he alleges that Kiphart, Burle, and Long indiscriminately pepper sprayed him and

13

others (TAC at ¶¶ 84, 168) and that Gilman, Lemons, Rodriguez, McNamara, T. Lee, Daut, and N. Lee grabbed him by the arms and dragged him, threw him to the ground, repeatedly beat him in the ribs with a baton, and then roughly, painfully zip cuffed his hands before carrying him by his limbs across the intersection. (Id. at ¶¶ 170-75). Plaintiff further alleges the use of kettling without warning constituted excessive force. (Id. at ¶ 282). In Count 13, Plaintiff alleges that to the extent individual Defendants did not participate in specific acts of excessive force against him, those Defendants, including Defendant O'Toole, are liable for failing to intervene or prevent the use of excessive force, despite having the means to do so. (Id. at ¶¶ 289-91).

Defendants argue they are entitled to qualified immunity for three reasons: first, the amended complaint fails to show that the Supervisory Defendants (Leyshock, Howard, Sachs, Boyher, Jemerson, and Rossomanno) knew that line officers were using any excessive force; second, insofar as the supervisors observed the use of any force, it was reasonable under the circumstances for them to believe that officers were using only necessary force to accomplish the arrest of Plaintiff; and, third, it was and is not clearly established that the use of a baton, tight handcuffing, arm twisting, or brief dragging of an arrestee constitute anything more than *de minimis* use of force, which is not sufficient to put any officer on notice that Plaintiff were being subjected to a Fourth Amendment violation.

Claims that law enforcement officers have used excessive force during an arrest or other "seizure" are analyzed under the Fourth Amendment and its "reasonableness standard." Graham v. Connor, 490 U.S. 386, 394-96 (1989). The question the Court must ask is whether, under the totality of the circumstances, the officer's actions were "objectively reasonable." Cook v. City of Bella Villa, 582 F.3d 840, 849 (8th Cir. 2009) (quoting Graham, 490 U.S. at 396). In determining whether the force used was reasonable, relevant circumstances include the severity of the crime,

14

the danger the suspect poses to the officer or others, and whether the suspect is actively resisting arrest or attempting to flee. Id. "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." Thompson v. Monticello, Arkansas, City of, 894 F.3d 993, 998 (8th Cir. 2018) (quoting Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013)); see also Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009). Ultimately, the reasonableness of the force applied must be judged from the perspective of a reasonable officer on the scene "rather than with the 20/20 vision of hindsight." Brown, 574 F.3d at 496.

Defendants' argument that none of the alleged uses of force against Plaintiff constitute Fourth Amendment violations because they resulted in no more than *de minimis* injury to Plaintiff is unavailing. Since 2011, the Eighth Circuit has made it clear that a *de minimis* injury does not preclude a Fourth Amendment violation. Chambers v. Pennycock, 641 F.3d 898, 906 (8th Cir. 2011)). The relevant inquiry is the nature of the force used, not the nature of the injury. Id.

Based on the facts alleged in the operative complaint, Defendant officers did not use any force in kettling Plaintiff; the alleged use of force came after he had been trapped in the intersection and was being placed under arrest. Therefore, Defendant officers are entitled to qualified immunity on Count 12 as it relates to the act of kettling Plaintiff. See Newbold, 2021 WL 4061066, at *8; Ortega, 2021 WL 3286703, at *14.

In addition, Plaintiff has not established that officers applying zip ties too tightly violates the Constitution. The Eighth Circuit has found that an officer who applies handcuffs so tightly they break a suspect's wrist uses excessive force in violation of the Fourth Amendment. Kukla v. Hulm, 310 F.3d 1046, 1050 (8th Cir. 2002). It has not been clearly established that anything less than this constitutes excessive force. Here, Plaintiff alleges the zip ties caused several individuals to suffer

from pain and numbness in their hands due to the tightness of the zip ties for months after the arrest. (TAC at ¶ 99). These allegations do not rise to the level of force established in <u>Kukla</u>, where the suspect's wrist was broken from the handcuffs. Because it was not clearly established that applying zip ties too tightly violates the Fourth Amendment, Defendant officers are entitled to qualified immunity on this portion of Plaintiff's claim. <u>See</u> <u>Newbold</u>, 2021 WL 4061066, at *8; <u>Ortega</u>, 2021 WL 3286703, at *14.

Defendants further argue it is not clearly established that the other alleged uses of force were unconstitutional. At the time of this incident, it was "clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." <u>Street</u>, 2021 WL 677909, at *6 (quoting <u>Brown</u>, 574 F.3d at 499). <u>See also</u> <u>Tatum v. Robinson</u>, 858 F.3d 544, 548-550 (8th Cir. 2017) (unreasonable to use pepper spray against a non-resisting, non-fleeing individual, suspected of a non-violent misdemeanor); <u>Blazek v. City of Iowa</u>, 761 F.3d 920, 925 (8th Cir. 2014) (it was excessive force to jerk an individual up by his arms with sufficient force to cause an injury to the individual's shoulder when the individual was not resisting arrest, posed no threat to officers, was not suspected of a serious offense, and was handcuffed and under control); <u>Johnson v. Carroll</u>, 658 F.3d 819, 828 (8th Cir. 2011) ("At the time of this incident, the law was sufficiently clear to inform a reasonable officer that it was unlawful to throw to the ground and mace a nonviolent, suspected misdemeanant who was not fleeing or herself resisting arrest, who posed little or no threat to anyone's safety, who never received verbal commands to remove herself, and whose only action was to engage in a protective maneuver."); <u>Krout v. Goemmer</u>, 583 F.3d 557, 566 (8th Cir. 2009) ("[T]he use of … gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable under the fourth amendment.").

Here, there is no indication that Plaintiff posed an immediate threat to the security of the officers or the public that evening. He fully complied with police orders and was not fleeing or resisting arrest in any way. Moreover, the alleged crime he was being detained for, failure to disperse, was a non-violent misdemeanor. Baude, 476 F. Supp. 3d at 913 (citation omitted). Given Eighth Circuit precedent, the deployment of pepper spray against a compliant, non-resisting individual was not objectively reasonable, nor was the force allegedly used during Plaintiff's arrest.

As for Defendants' argument that nothing in the record shows the Supervisory Defendants personally participated in any use of force against Plaintiff, they may still be liable under § 1983 if they failed or refused to intervene when a constitutional violation took place in their presence. Nance v. Sammis, 586 F.3d 605, 611-12 (8th Cir. 2009); Baude, 476 F. Supp. 3d at 913 (citing cases). At this stage of the litigation, Plaintiff only needs to allege facts sufficient to state a plausible claim for liability. Here, Plaintiff alleges the Supervisory Defendants were present at the mass arrest, witnessed officers under their command using excessive force, and failed to intervene. Plaintiff also alleges the Supervisory Defendants issued orders allowing the use of force against a non-violent, largely compliant crowd. With respect to Defendant O'Toole, Plaintiff alleges O'Toole was in the Real Time Crime Center during the events, monitoring the situation, communicating with officers on the ground, and failed to intervene. These allegations are sufficient to state a claim against the Supervisory Defendants and O'Toole. See Wagner v. Jones, 664 F.3d 259, 275 (8th Cir. 2011) ("The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see."). In Nance, the Eighth Circuit held that, as of June 2007, it was clearly established that "an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for

violating the Fourth Amendment." Id. Accordingly, Defendants are not entitled to qualified immunity on Counts 12 as it relates to Plaintiff being dragged, beaten, and pepper sprayed, and on the entirety of Count 13.

  **(v)  Count 3 – Conspiracy**

  In Count 3, Plaintiff asserts a § 1983 civil conspiracy claim against Defendant Officers and Defendant O'Toole. He alleges Defendants Leyshock, Sachs, Jemerson, and Rossomanno conspired to "design and implement" the kettling plan; the Supervisor Officers joined the conspiracy when they "directed officers under their control and supervision" to execute the kettling plan; the remaining supervisors and officers then joined the conspiracy when they "agreed to participate" in the kettling plan, and furthered the conspiracy by kettling, arresting and assaulting Plaintiff; applying zip cuffs; and maliciously initiating charges against him.

  The remaining Defendant officers argue they are entitled to qualified immunity on Plaintiff's conspiracy claim because the law regarding the application of the intracorporate conspiracy doctrine is unsettled and thus not "clearly established." Plaintiff argues that the intracorporate conspiracy doctrine does not bar § 1983 conspiracy claims concerning police misconduct and that his rights to be free from unreasonable seizure and excessive force were clearly established in September 2017.

  The intracorporate conspiracy doctrine generally "allows corporate agents acting within the scope of their employment to be shielded from constituting a conspiracy[.]" Myers v. Starke, 420 F.3d 738, 742 (8th Cir. 2005). The rule derives from the nature of conspiracy, which requires two or more separate persons. Baude, 476 F. Supp.3d at 915 (citing Ziglar v. Abbasi, 137 S. Ct. 1843, 1867 (2017)). When two agents of the same legal entity make an agreement in the course of their official duties, as a practical and legal matter their acts are attributed to their principal, so it

follows that there has not been an agreement between two or more separate people. Ziglar, 137 S. Ct. at 1867-68.

The Eighth Circuit has only applied the intracorporate conspiracy doctrine to claims under 42 U.S.C. § 1985, see L.L. Nelson Enterprises, Inc. v. Cty. of St. Louis, 673 F.3d 799, 812 (8th Cir. 2012); it has not addressed whether the doctrine applies in civil rights cases, particularly under § 1983, where the acts of a municipal employee are not attributable to the municipality itself. The question of whether the doctrine should apply to § 1983 claims has arisen several times in this District, but judges have declined to address its validity in the absence of clear direction from the Eighth Circuit. See, e.g., Aldridge v. City of St. Louis, No. 4:18-CV-1677-CAS, 2019 WL 1695982 at *8 (E.D. Mo. Apr. 17, 2019).

Given the current legal landscape, the Court is persuaded by Chief Judge Sippel's opinion in Baude that the remaining Defendant Officers and O'Toole are entitled to qualified immunity on Count 3 because the law regarding the application of the intracorporate conspiracy doctrine in § 1983 cases was not clearly established. See Baude, 476 F. Supp. 3d at 916 (granting qualified immunity on the § 1983 civil conspiracy claim); but see Street, 2021 WL 677909, at *8 (disagreeing with Baude and holding that "a reasonable SLMPD officer would have known that he or she could be subjected to § 1983 conspiracy liability by conspiring with other SLMPD officers to violate plaintiffs' clearly established constitutional rights"); Ortega, 2021 WL 3286703, at *15 (same); Davis, 2021 WL 4148331, at *10 (same).[7]

---

[7]  The Eighth Circuit cases relied upon by Street as recognizing a § 1983 conspiracy claim against police officers did not address the potential application of the intracorporate conspiracy doctrine. See, e.g., Small v. McCrystal, 708 F.3d 997, 1010 (8th Cir. 2013); S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs, 725 F.3d 843, 853 (8th Cir. 2013).

In <u>Ziglar</u>, the Supreme Court held that the fact that courts were divided as to whether the intracorporate-conspiracy doctrine should apply to conspiracy claims under § 1985 "demonstrates that the law on the point is not well established."  137 S. Ct. at 1868.  <u>Ziglar</u> was decided on June 19, 2017, just before the events at issue in the instant case.  The Supreme Court explained "[w]hen the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability." <u>Id</u>. The Court cannot discern a meaningful distinction between the nature of the uncertainty surrounding the doctrine's applicability to § 1985 conspiracies and its applicability to § 1983 conspiracies.  The law is unsettled in both contexts, and as such, the Court is bound by <u>Ziglar</u> to hold that qualified immunity applies.  The Court will therefore grant the motion to dismiss Count 3.

### C.    Official Immunity

"Under Missouri law, public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." <u>Davis v. White</u>, 794 F.3d 1008, 1013 (8th Cir. 2015). Official immunity only protects officials who act within the course of their official duties and without malice. <u>Alsup</u>, 588 S.W.3d at 190. "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." <u>Id</u>. at 190, n. 7. "[A] police officer's decision to use force in the performance of his duties is discretionary." <u>Davis</u>, 794 F.3d at 1013. The acts alleged in Plaintiff's third amended complaint are discretionary and thus, Defendants may be entitled to official immunity. However, Plaintiff's allegations are sufficient to allege that Defendants acted with malice. "The allegedly unnecessary use of force against non-resisting individuals, such as Plaintiff, the inflammatory and disparaging remarks made by SLMPD officers before, during, and after the incident, and the comparison between

SLMPD's response to the <u>Stockley</u> protests and other protests not related to police misconduct may reasonably support a finding of malice or bad faith." <u>Newbold</u>, 2021 WL 4061066, at *10-11 (citing <u>Ortega</u>, 2021 WL 3286703, at *17; <u>Street</u>, 2021 WL 677909 at *10). Official immunity is not appropriate at this stage of the litigation.

Plaintiff asserts state law claims of assault and battery, false arrest, abuse of process and malicious prosecution, intentional infliction of emotional distress, and negligent infliction of emotional distress. The remaining Defendant officers argue that all of Plaintiff's state law claims are either insufficient or barred by official immunity, essentially for the same reasons advanced in support of qualified immunity, citing <u>State ex rel. Alsup v. Kanatzar</u>, 588 S.W.3d 187 (Mo. 2019) and <u>Edwards v. McNeill</u>, 894 S.W.2d 678 (Mo. Ct. App. 1995).

### (i)      Counts 5 and 14 – Assault and Battery

Defendants argue Plaintiff's assault and battery claims should be dismissed for the same reasons advanced in support of qualified immunity for the § 1983 excessive force claim. "Under Missouri law, a law enforcement officer 'is answerable in damages as for assault and battery only when in the performance of his duty in making the arrest he uses more force than is reasonably necessary for its accomplishment.'" <u>Schoettle v. Jefferson Cty.</u>, 788 F.3d 855, 861 (8th Cir. 2015) (quoting <u>Neal v. Helbling</u>, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987)). "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." <u>Davis</u>, 794 F.3d at 1013. Generally, official immunity applies to all discretionary acts except those done in bad faith or with malice. <u>State ex rel. Twiehaus v. Adolf</u>, 706 S.W.2d 443, 447 (Mo. 1986). The relevant definition of bad faith or malice in this context ordinarily requires actual intent to cause injury. <u>Id.</u> Because the Court has already found the facts alleged in Plaintiff's complaint

establish an inference that Defendant officers acted with malice or bad faith by dragging and beating him, the Court denies the motion to dismiss Plaintiff's claims for assault and battery.

(ii)     **Count 6 - False Arrest**

Defendants assert Plaintiff's false arrest claim should be dismissed for the same reasons they should be granted qualified immunity for the § 1983 unlawful arrest claim. Justification is a complete defense to a cause of action for false arrest. Edwards, 894 S.W.2d at 683. Because Plaintiff's allegations do not establish Defendants acted with probable cause to arrest him, the Court denies the motion to dismiss the claim for false arrest. See Newbold, 2021 WL 4061066, at *11.

(iii)     **Counts 7 and 8 - Abuse of Process, Malicious Prosecution**

In Counts 7 and 8, Plaintiff asserts claims of abuse of process and malicious prosecution against the remaining Defendant officers and O'Toole. To assert a claim of malicious prosecution, a plaintiff must establish: "(1) the commencement of a prosecution against the plaintiff, (2) the instigation of that prosecution by the defendant, (3) the termination of the proceeding in favor of the plaintiff, (4) the want of probable cause for the prosecution, (5) that defendant's conduct was actuated by malice, and (6) damage to the plaintiff." Baker v. St. Joe Minerals Corp., 744 S.W.2d 887, 888 (Mo. Ct. App. 1988). Instigation requires affirmative action either through advice, encouragement, pressure, or something similar. Id. at 889. "The providing of honest information" does not constitute instigation, although supplying false information may. Id.

To establish a claim for abuse of process, a plaintiff must show: "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." Trustees of Clayton Terrace Subdivision v. 6

Clayton Terrace, LLC, 585 S.W.3d 269, 277 (Mo. 2019) (quoting Ritterbusch v. Holt, 789 S.W.2d 491, 493 (Mo. 1990)). Both malicious prosecution and abuse of process require a legal process be initiated. Id.; Baker, 744 S.W.2d at 888.

The operative complaint contains only two factual allegations related to either of these claims. One is that all of the arrestees were given summonses showing they had been charged with "failure to disperse" and instructing them to appear in St. Louis Municipal Court on October 18, 2017. (TAC at ¶ 114). The second is that on October 13, 2017, the City Counselor's office issued a letter stating that it was still reviewing the evidence to decide whether to file charges and that the arrestee had no obligation to appear in Municipal Court on October 18, 2017. (Id. at ¶ 122). There are no allegations that Plaintiff was charged with a crime, nor are there any allegations about who instigated the issuance of the initial summons. While Plaintiff alleges Defendants arrested him, he does not allege those same officers – or Defendant O'Toole – were actually involved in issuing summons. Consequently, he does not allege sufficient facts to state a claim for abuse of process or for malicious prosecution. Counts 7 and 8 will, therefore, be dismissed. See Newbold, 2021 WL 4061066 at *11 (dismissing claims of malicious prosecution and abuse of process because plaintiffs did not allege any facts showing any defendant had a role in the initiation of any proceedings against the plaintiffs); Ortega, 2021 WL 3286703, at * 18 (same); Street, 2021 WL 677909 at *10 (same).

**(iv)   Counts 9 and 10 - Intentional and Negligent Infliction of Emotional Distress**

Plaintiff alleges a claim for intentional infliction of emotional distress in Count 9 and negligent infliction of emotional distress in Count 10 against Defendant officers. Relying on State ex rel. Halsey v. Phillips, 576 S.W.3d 177 (Mo. 2019), Defendants argue the Court must dismiss these counts because they are "simply repackaged claims of assault or battery." In Halsey, the

23

Missouri Supreme Court recited the general rule that "[w]here a defendant's conduct amounts to the commission of one of the traditional torts … and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of intentional emotional distress will not lie, and recovery must be had under the appropriate traditional common-law action." Id. at 181 (quoting K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. 1996)). This rule only applies to the tort of intentional infliction of emotional distress, not negligent infliction of emotional distress. Id. Thus, Plaintiff's claim of negligent infliction of emotional distress may proceed. See Street, 2021 WL 677909, at *11 ("[P]laintiffs only allege a negligent infliction claim so K.G. and Halsey do not bar this claim.").

However, the Court need not dismiss Plaintiff's intentional infliction of emotional distress claim either. While he cannot proceed to judgment on all his claims for assault and intentional infliction of emotional distress when they are all based on the same underlying conduct, at this stage of the case, he may assert alternative theories of recovery. See Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Therefore, at this point, the Court will not dismiss the claim of intentional infliction of emotional distress with the understanding that at some point, Plaintiff must choose between his competing claims. Ortega, 2021 WL 3286703, at *18-19.

### D. Vicarious liability under City Charter

In Count 11, Plaintiff asserts a novel theory of liability, to-wit, that Defendants O'Toole and Deeken are vicariously liable for the acts and omissions of the Defendant Officers by virtue of Article VII, Section 5 of the Charter of the City of St. Louis, which provides that "[e]ach head of a department, office or division shall be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure

himself." Charter, Art. VII § 5. Plaintiff alleges that O'Toole and Deeken were officers and employees of the Chief of Police and were acting in the scope of their employment when they committed the acts alleged in the operative complaint. Defendants ask the Court to decline supplemental jurisdiction over this claim because no Missouri court has yet to construe this Charter section; it is an unsettled state law issue.

This Charter provision, in effect since 1914, has never been held by a Missouri court to impose vicarious liability for the acts of police officers such as is alleged here. Three judges in this District recently declined to consider this claim, finding it raises novel and complex issues of statutory construction and conflicts of law that would be more appropriately resolved first by Missouri state courts. Davis, 2021 WL 4148331, at *11; Newbold, 2021 WL 4061066, at *11; Ortega, 2021 WL 3286703, at *19; Street, 2021 WL 677909, at *13-14. This Court agrees and likewise declines to exercise supplemental jurisdiction over this claim. As Judge Perry noted in O'Toole, "[t[his Court is not the proper forum to litigate complex and unsettled questions of state law preemption over obscure municipal ordinances." Id. Count 11 will be dismissed without prejudice.

### E.      Conclusion

For these reasons, all claims against Defendant officers against whom no specific allegations were made are dismissed without prejudice. Plaintiff's § 1983 civil conspiracy claim (Count 3) and the portions of his excessive force claim (Count 12) relating to kettling and zip-cuffing too tightly will be dismissed with prejudice on the basis of qualified immunity. Plaintiff's state law claims of abuse of process and malicious prosecution (Counts 7 and 8) are dismissed with prejudice for failure to state a claim. Because the Court declines to exercise supplemental

jurisdiction over Count 11, the only claim against Defendant Deeken, this claim will be dismissed without prejudice.

The claims and Defendants remaining in this case are:

Counts 1 and 2 against Defendants Lt. Colonel Gerald Leyshock, Lt. Timothy Sachs, Major Daniel Howard, Sgt. Randy Jemerson, Sgt. Brian Rossomanno, Officers Trenton Lee, Brian Lemons, Joseph Rodriguez, Timothy McNamara, Patrick Daut, Nicholas Lee, Sgt. Matthew Karnowski, Lt. Scott Aubuchon, Lt. Bill Kiphart, Officer Matthew Burle, Sgt. Tom Long, and Officer Samuel Gilman (the "remaining individual defendants");

Count 4 against the City;

Counts 5, 6, 9, 10, 14 against the remaining individual defendants;

Count 12 against the remaining individual defendants as it relates to the alleged acts of dragging, beating, and pepper spraying Plaintiff; and

Count 13 against the remaining individual defendants and Defendant O'Toole.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Third Amended Complaint [115] is **GRANTED in part** and **DENIED in part** as set forth herein:

i.      All Defendants except for the City of St. Louis and individual defendants O'Toole, Leyshock, Sachs, Howard, Jemerson, Rossomanno, Trenton Lee, Lemons, Rodriguez, McNamara, Daut, Nicholas Lee, Karnowski, Aubuchon, Kiphart, Burle, Long, and Gilman are **DISMISSED** from this action **without prejudice**.

ii.      Counts 3, 7, and 8 are **DISMISSED** in their entirety, **with prejudice**.

iii.      Count 12 is **DISMISSED in part**, **with prejudice**, solely as it relates to the alleged acts of kettling and applying zip cuffs too tightly.

iv.     Supplemental jurisdiction under 28 U.S.C. § 1367 over Count 11 is **DENIED** and Count 11 is **DISMISSED without prejudice**.

In all other respects, the Motion to Dismiss is **DENIED**.

Dated this 29th day of September, 2021.

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**